UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-486-RJC
(3:17-cr-55-RJC-DCK-3)

| | |
|---|---|
| BRYAN PERALTA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I. BACKGROUND

Petitioner Bryan Peralta conspired to distribute and to possess with intent to distribute methamphetamine in Catawba, Burke, and Mecklenburg counties in North Carolina. (Crim. Case No. 3:17cr55-RJC-DCK-3, Doc. No. 69 at ¶ 11: Final PSR). A cooperating defendant (CD1) admitted to having received 15 kilograms of methamphetamine from a man he knew as "Boss." (Id. at ¶ 12). CD1 identified Petitioner as "the 'number one' courier for 'Boss'" and stated that he had received a kilogram of methamphetamine from Petitioner on two separate occasions and that Petitioner had provided a pound of methamphetamine to him on eight different occasions. (Id. at ¶ 16). Another cooperating defendant (CD2) stated that he had just started trafficking drugs with Petitioner, that he had accompanied Petitioner on two prior deliveries, and that the officers had stopped his car as he was attempting to conduct his first transaction alone. (Id. at ¶ 14). CD2 made a consensually recorded call to Petitioner in which the two men discussed CD2 having been stopped by officers with three pounds of

1

methamphetamine, which CD2 had intended to deliver. (Id. at ¶ 15). CD2 admitted that Petitioner had recruited him, that he was a courier for Petitioner, and that Petitioner had given him a car for making drug deliveries. (Id. at ¶ 22).

On March 23, 2017, officers stopped Petitioner and found eight ounces of methamphetamine and $2,970 in cash in his vehicle. (Id. at ¶ 17). Petitioner let the officers search his home, where they found another six pounds of methamphetamine. (Id.). Petitioner admitted that he would receive shipments of up to two kilograms of methamphetamine at his house, which he would then break down into smaller packages and deliver. (Id. at ¶¶ 18-20). He also would collect money for the drugs. (Id. at ¶ 21).

On April 18, 2017, a grand jury indicted Petitioner, charging him with conspiracy to distribute and to possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count One) and distribution of and possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count Four). (Id., Doc. No. 31: First Superseding Indictment). Petitioner agreed to plead guilty to Count One. (Id., Doc. No. 47 at ¶ 1: Plea Agrmt.). As part of the plea agreement, Petitioner agreed that he understood that a sentence of not less than ten years, nor more than life imprisonment, applied. (Id. at ¶ 4). He also agreed that any estimate of a likely sentence was a prediction, not a promise; that the Court was not bound by the parties' recommendations or agreements; that the Court could impose any sentence up to the statutory maximum; and that he would not be allowed to withdraw his guilty plea as a result of the sentence imposed. (Id. at ¶ 6).

The parties agreed to jointly recommend that the offense involved more than 1,500 grams, but less than 5,000 grams, of methamphetamine, for a base offense level of 32; that

Petitioner's plea was timely for purposes of acceptance of responsibility; that if the Court determined that Petitioner was a career offender or an armed career criminal, those provisions would apply; and that either party could argue their position regarding other specific offense characteristics, adjustments, departures, or variances. (Id. at ¶ 7). The plea agreement also provided that "[t]he United States will inform the Court and the probation office of all facts pertinent to the sentencing process . . . ." (Id.).

Petitioner stipulated that he had read and understood the factual basis and that it could be used by the Court without objection in determining the applicable guideline range and sentence. (Id. at ¶ 14). Petitioner also agreed to waive the right to contest his conviction or sentence on appeal, except as to claims of ineffective assistance of counsel or prosecutorial misconduct. (Id. at ¶¶ 18-19). Finally, he affirmed that there were no agreements, representations, or understandings between the parties other than those set forth in the plea agreement. (Id. at ¶ 29).

At the plea hearing, Petitioner affirmed that he had had sufficient time to discuss any potential defenses with his attorney and that he was satisfied with his attorney's services. (Id., Doc. No. 50: Acceptance and Entry of Guilty Plea). He affirmed that he understood the minimum and maximum charges, that the Court could not determine his guideline sentencing range until after the presentence report was prepared, and that he could receive a sentence above or below the guideline range. (Id.). Petitioner also affirmed that he understood that he could not withdraw his guilty plea if the sentence was more severe than he expected. (Id.). He affirmed that no one had threatened, intimidated, or forced him to plead guilty, and that, other than the terms of his plea agreement, no one had promised him leniency or a light sentence to induce him to plead guilty. (Id.). He affirmed that he was guilty of the offense and that he understood the

3

waivers in his plea agreement. (Id.). The magistrate judge accepted Petitioner's guilty plea, finding that he was pleading guilty knowingly and voluntarily. (Id.).

A probation officer issued a presentence report, recommending that Petitioner be sentenced at a base offense level of 32, based on the amount of drugs stipulated to in his plea agreement; that he receive a two-level reduction under the safety valve in U.S.S.G. §§ 5C1.2, 2D1.1(b)(17); and that he receive a three-level reduction for acceptance of responsibility, for a total offense level of 27. (Id., Doc. No. 64 at ¶¶ 27-28, 34-36: Draft PSR). The statutory mandatory minimum term of imprisonment was 120 months. (Id. at ¶ 73). Based on Petitioner's criminal history category of I, the applicable advisory guideline range without the mandatory minimum was 70-87 months of imprisonment. (Id. at ¶¶ 42, 74).

The Government objected to the PSR, arguing that Petitioner should receive a three-level enhancement for being a manager or supervisor of a conspiracy involving five or more participants. (Id., Doc. No. 65 at 1: Gov. Objection) (citing U.S.S.G. § 3B1.1(b)). The Government argued that Petitioner had recruited CD2 as a courier and that he had given CD2 a car to use to make deliveries for him. (Id.). In support of this enhancement, the Government attached a debriefing report from CD2. (Id., Doc. No. 65-1). In light of this enhancement, the Government also asserted that Petitioner should not receive a two-level reduction under the safety valve. (Id., Doc. No. 65 at 1).

Petitioner objected to the Government's arguments, contending that the debrief report from CD2 was inaccurate and could not be corroborated, that CD2 was involved in the conspiracy for less than three weeks, and that CD2 had received his directions from "Boss," and had made deliveries on his own, without Petitioner. (Id., Doc. No. 66 at 1). He asserted that CD2 was a friend who had approached him about making some money and that he had never

4

managed or supervised CD2, but had only helped acclimate CD2 to becoming a drug courier. (Id.). Petitioner also argued that he had provided truthful information to law enforcement regarding his role in the offense and qualified for the safety-valve adjustment. (Id. at 2). The probation officer issued a revised PSR that accepted the Government's arguments, applied the three-level enhancement for Petitioner's role in the offense, advised that the safety-valve adjustment did not apply, and recommended an advisory guideline range of 121-151 months of imprisonment. (Id., Doc. No. 69 at ¶¶ 31, 76: Final PSR).

The Government filed a sentencing memorandum, arguing that Petitioner's post-arrest statements also supported his role enhancement. (Id., Doc. No. 75). In his statement, Petitioner admitted that he first wanted to collect some money that someone owed him for drugs that Petitioner had fronted and then he was going to call someone to deliver the methamphetamine that was found in Petitioner's car to Hickory, North Carolina. (Id., Doc. No. 75-1). Petitioner stated that there were a few different people that he would call to deliver methamphetamine, and he identified some of these couriers by name. (Id.).

At sentencing, this Court adopted the PSR without change, determined that the advisory guideline range was 121 to 151 months of imprisonment, and imposed a 121-month sentence. (Id., Doc. No. 82: Statement of Reasons). In overruling Petitioner's objections to the role enhancement, this Court found that Petitioner "acted in a managerial role and was in charge of a stash house, collecting monies, and arranging distributions." (Id. at 1). The Court noted that it had considered both parties' arguments, as well as the factors in 18 U.S.C. § 3553(a), and determined that a sentence at the low end of the guideline range was sufficient, but not greater than necessary, to accomplish the purposes of sentencing. (Id. at 4). The Court granted the Government's motion to dismiss Count Four of the Indictment. (Id., Doc. No. 81: Judgment).

5

Petitioner did not appeal, but timely filed the present motion to vacate in August 2018. He argues that the Government committed prosecutorial misconduct and breached the plea agreement by recommending that he receive an adjustment for playing a managerial role in the offense. He also contends that his trial counsel provided ineffective assistance by not challenging the alleged breach of the plea agreement, by not arguing effectively for the correct adjustments at sentencing, and by not consulting with him about an appeal.

## II.  STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines, 423 F.2d at 529.

## III.  DISCUSSION

### A. Petitioner's Claim of Prosecutorial Misconduct

To establish prosecutorial misconduct, a defendant must demonstrate: (1) that the conduct of the prosecutor was improper, and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). In support of his prosecutorial misconduct claim, Petitioner argues that the Government committed prosecutorial misconduct and breached the plea agreement by recommending that he receive an adjustment for playing a managerial role in the offense. Petitioner argues that he understood, based on the factual basis and his plea agreement, that his role in the offense was that of a courier. (Doc. No. 1 at 3-4). In support, he cites CD1's

6

identification of Petitioner as a courier and the statement in the factual basis that either party could present additional facts "which do not contradict the agreed facts set forth below." (Id. at 4). He asserts that the prosecutor improperly advocated for the managerial role adjustment and that this prejudiced him because it increased his offense level and rendered the safety valve inapplicable. (Id.).

Petitioner's prosecutorial misconduct claim fails because he has failed to show improper conduct or prejudice. First, the Government preserved, in the plea agreement, the right to argue its position regarding other specific offense characteristics, enhancements, or adjustments. See (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 47 at ¶ 7(d)). Therefore, presenting evidence regarding Petitioner's role in the offense was proper. Second, the statement by a cooperating codefendant that Petitioner was a courier is not a legal determination of Petitioner's role in the offense. Finally, the Government's position that Petitioner was more than a courier did not contradict the codefendant's statement. While Petitioner's interactions with that codefendant may only have been in the role of a courier, additional information showed that Petitioner played a larger role in the drug conspiracy. See (Id., Doc. Nos. 65, 75-1). Petitioner's assertion that he did not recruit or exercise control over anyone is belied by his admission that he "pointed out a job" to CD2 and "showed him how to do the job." (Doc. No. 1 at 5). He also provides no evidence to undermine his post-arrest statements that he called other people to deliver drugs. See (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 75-1). Because the prosecutor's presentation of evidence regarding Petitioner's role in the offense was proper, Petitioner's prosecutorial misconduct claim fails.

Moreover, Petitioner also cannot show prejudice from the prosecutor's proffer regarding his role in the offense because the supervisor or manager adjustment properly applies. "[T]he

7

enhancement is justified if the defendant managed or supervised the activities of at least one other person in a scheme that involved five or more participants." United States v. Bartley, 230 F.3d 667, 673 (4th Cir. 2000). Here, Petitioner recruited CD2, trained him and directed his activities, and even provided him a car to use for delivering drugs. He also had other couriers who delivered drugs for him. Petitioner's contention that less than five people were involved in the conspiracy is without merit because Petitioner, Boss, CD1, CD2, and at least two other couriers that Petitioner named in his post-arrest statement were involved in the offense. See (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 69 at ¶¶ 13-14, 22; Doc. No. 75-1). Because Petitioner supervised the activities of others in a scheme that involved five or more participants, the Government properly argued for the enhancement and this Court properly applied it. See United States v. Al-Talib, 55 F.3d 923, 932 (4th Cir. 1995) (finding application of the enhancement proper where the defendant supervised the preparation of drugs for shipment and sent others to deliver the drugs).

In sum, because the Government's argument regarding Petitioner's role in the offense was proper and there was no prejudice because the enhancement properly applied, this Court will dismiss Petitioner's prosecutorial misconduct claim.

**B. Petitioner's Claims of Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

8

professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner argues that his counsel provided ineffective assistance by: (1) failing to object to the prosecutor's breach of the plea agreement; (2) not effectively challenging the three-level adjustment for playing a managerial role in the offense; (3) not requesting a reduction under U.S.S.G. § 3B1.2 for playing a mitigating role in the offense; and (4) not consulting with

9

Petitioner about an appeal. (Doc. No. 1 at 4-9). For the following reasons, each of these claims is without merit.

**1. Petitioner's Contention that Counsel Was Ineffective for Failing to Argue that the Government Breached the Plea Agreement**

First, Petitioner's contention that counsel was ineffective for failing to argue that the Government breached the plea agreement is without merit because, as discussed above, the Government did not breach the plea agreement. Petitioner asserts that when his attorney explained the plea agreement and factual basis to him, he "understood" that he was simply a courier and that the Government had agreed to this "fact." (Doc. No. 1 at 5). However, neither the plea agreement, nor the factual basis, state that Petitioner's role in the offense was limited to that of a courier. Moreover, the plea agreement specifically states that the parties reserve their right to argue regarding the application of specific offense characteristics, enhancements, and adjustments. (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 47 at ¶ 7(d)). Additionally, during the plea hearing, the Court reviewed the plea agreement's terms and advised Petitioner that the guideline range could not be determined until after a PSR had been prepared, that he could be sentenced above the guideline range, and that he would still be bound by his plea agreement if he received a more severe sentence that he expected. (Id., Doc. No. 50). Petitioner agreed to these terms and affirmed that "[o]ther than the terms of [his] Plea Agreement," no one had made him promises of leniency to induce him to plead guilty. (Id. at 3). Because there was no agreement as to Petitioner's role in the offense, counsel was not deficient in failing to argue that the Government breached the plea agreement.

Petitioner also cannot show prejudice because he does not allege that, but for counsel's actions, he would have proceeded to trial. Rather than seeking to set aside the plea agreement

10

and to proceed to trial, Petitioner asks only to have his sentence vacated. See (Doc. No. 1 at 5). This is insufficient to establish prejudice in the context of a guilty plea. See Meyer, 506 F.3d at 369. In sum, this claim of ineffective assistance of counsel is without merit.

### 2. Petitioner's Contention that Counsel Was Ineffective for Failing to Effectively Challenge the Recommendation that Petitioner Played a Managerial Role in the Offense

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999). Petitioner's contention that counsel was ineffective because he did not effectively challenge the recommendation that Petitioner played a managerial role in the offense is without merit. Petitioner's counsel objected to this adjustment, arguing that CD2's information was inaccurate, that CD2 had been involved in the conspiracy for less than three weeks, and that he had received his directions from "Boss," not Petitioner. (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 66). He also asserted that CD2 was a friend and that Petitioner had merely helped him acclimate to becoming a drug courier, but had not managed or supervised him. (Id.). Despite these arguments, this Court overruled Petitioner's objections and determined that the managerial enhancement applied. See (Id., Doc. No. 82 at 1).

Although Petitioner asserts that his counsel should have argued that the offense did not involve five or more participants, citing only "Boss," CD1, CD2, and Petitioner, he ignores the fact that CD1 indicated that "Boss" had more than one runner, as well as Petitioner's own post-arrest statements that he used "a few different" couriers to deliver methamphetamine. See (Id., Doc. No. 75-1 at 3). Moreover, the Court rejects as conclusory and without merit Petitioner's

assertion that "[h]ad counsel been prepared with adequate facts and arguments" the Court would not have applied the role adjustment and would have applied the safety valve to sentence him below the statutory mandatory minimum sentence. See (Doc. No. 1 at 7). Petitioner simply points to no evidence to undercut his own admissions in his post-arrest statements that he would call a few different people to deliver methamphetamine for him. See (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 75-1). And, regardless of whether Petitioner approached CD2 for a job or CD2 approached him, his role in acclimating CD2 into the conspiracy as a courier and providing him with a car indicates that Petitioner had a greater role in the offense than simply acting as a courier. Here, Petitioner has simply not shown either ineffective assistance of counsel or prejudice at sentencing. See Royal, 188 F.3d at 249. In sum, this claim of ineffective assistance of counsel is without merit.

### 3. Petitioner's Contention that Counsel Was Ineffective for Failing to Request a Reduction in Petitioner's Offense Level for Playing a Mitigating Role in the Offense

Next, Petitioner's similar contention that counsel was deficient and he was prejudiced because counsel did not request a reduction for playing a mitigating role in the offense is also without merit. See (Doc. No. 1 at 7). Where a group of people participates in an offense, a defendant may be entitled to a mitigating role adjustment if his conduct "is less culpable than other members of the group to such a degree that a distinction should be made at sentencing." United States v. Pratt, 239 F.3d 640, 646 (4th Cir. 2001) (internal citation and quotation omitted). The Fourth Circuit has held that the "critical inquiry" in determining whether a defendant has played a minor or minimal role in the offense is "whether the defendant's conduct is material or essential to committing the offense." Id. (internal quotation and citation omitted).

Here, Petitioner's role in the offense was not limited to being "simply a delivery guy," as he contends. See (Doc. No. 1 at 7). He received drugs, broke them down into smaller amounts and packaged them for sale, delivered the drugs, used other couriers to deliver drugs, collected drug proceeds, and recruited and trained CD2 as a courier, including providing him with a car to use for deliveries. (Crim. Case No. 3:17-cr-55-RJC-DCK-3, Doc. No. 69 at ¶¶ 18-21; Doc. Nos. 65, 75). This Court also determined that he was "in charge of a stash house, collecting monies, and arranging distributions" of methamphetamine. (Id., Doc. No. 82 at 1). Given these facts, counsel was not deficient for failing to move for a mitigating role adjustment. See Strickland, 466 U.S. at 687-89; United States v. Gonzalez-Delgado, 195 F. App'x 120, 123 (4th Cir. 2006) (holding that courier who transported over two kilograms of almost pure methamphetamine was not entitled to a mitigating role adjustment). Petitioner's assertion that he was prejudiced because this Court would have granted the role adjustment and he would have received a lower sentence is conclusory and without merit. Because Petitioner's actions were essential to the commission of the drug-trafficking conspiracy, he was not entitled to a reduction for playing a minor or minimal role in the offense. See United States v. White, 875 F.2d 427, 434 (4th Cir. 1989) (rejecting defendant's assertion that he was entitled to a minor participant reduction because he was acting as a drug courier); United States v. Young, 414 F. App'x 541, 545 (4th Cir. 2011) (holding defendant's "managerial activities demonstrate[d] that his role cannot be defined as either minor or minimal"); United States v. Beard, 232 F. App'x 368, 371 (4th Cir. 2007) (holding that the district court did not err in denying a two-level reduction for being a minor participant in the offense when the evidence showed that the defendant was a manager or supervisor). Therefore, he can show neither deficient performance nor prejudice from counsel's

failure to move for this reduction. In sum, this claim of ineffective assistance of counsel is without merit.

   **4. Petitioner's Contention that Counsel Was Ineffective for Failing to Consult with Petitioner Regarding an Appeal**

Counsel has a duty to consult with a defendant about an appeal where "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or where the "defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 479-80 (2000). Courts consider several factors in determining whether counsel had a duty to consult, including: whether the defendant pleaded guilty, which limits the number of appealable issues and can show a defendant's desire to end judicial proceedings; "whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights." United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010). "If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." Roe, 528 U.S. at 484.

Here, Petitioner did not indicate an interest in appealing, and he has identified no evidence that a rational defendant would have wanted to appeal. Therefore, Petitioner's contention that trial counsel provided ineffective assistance by failing to consult with him regarding an appeal after Petitioner was sentenced is without merit. Petitioner admits that he did not inform counsel that he wanted to file an appeal, stating that he "relied on the representations during the plea colloquy, plea discussions and trial counsel's advice that he was giving up his appellate rights in exchange for the plea." (Doc. No. 1 at 8). He argues, however, that counsel

14

should have informed him that the Government's misconduct would have released him from his waiver of appeal. (Id. at 8-9). He also contends that had counsel done so, he would have requested an appeal to argue that the Government breached the plea agreement. (Id.).

Petitioner's contention that counsel should have advised him that the Government's alleged breach of the plea agreement relieved him of the limitations of the appellate waiver is misplaced both because the Government did not breach the plea agreement and because the appellate waiver specifically excepted claims of prosecutorial misconduct. Because there was already an exception for claims of prosecutorial misconduct, Petitioner's contention that he would have appealed had he known that he could raise the alleged breach of the plea agreement on appeal is without merit because he did not ask to appeal despite the ability to do so. Therefore, he has not shown prejudice. See Roe, 528 U.S. at 484.

In sum, Petitioner pleaded guilty, was sentenced at the bottom of the applicable guideline range (which was only a month above the statutory mandatory minimum sentence), and waived the right to appeal his conviction or sentence, except as to claims of ineffective assistance or prosecutorial misconduct. He admittedly did not indicate to counsel that he wanted to appeal. Given these facts, as well as the absence of any non-frivolous grounds for appeal, Petitioner's counsel was not ineffective even if counsel failed to consult with him regarding an appeal. See Cooper, 617 F.3d at 308 (holding failure to consult with a defendant about an appeal was not ineffective where the defendant received the best sentence he could have under the plea agreement, there were no non-frivolous issues to appeal, and the defendant wanted to conclude the criminal proceedings). In sum, this claim of ineffective assistance of counsel is without merit.

**IV. CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: November 28, 2018

Robert J. Conrad, Jr.
United States District Judge